**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICKI LYNN GRATO,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>  Defendant. | NO. CV 06-6643 FMO<br><br>**ORDER Re:  JOINT STIPULATION** |

**PROCEEDINGS**

Vicki Lynn Grato ("plaintiff") filed a Complaint on October 18, 2006, seeking review of the denial by the Commissioner of the Social Security Administration[1] ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act").  42 U.S.C. § 405(g).  Thereafter, the parties consented to proceed before the undersigned United States Magistrate Judge.  On August 22, 2007, the parties filed a Joint Stipulation ("Joint Stip.").  The court has taken the matter under submission without oral argument.

---

[1]  Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of former Commissioner Jo Anne B. Barnhart as the defendant in this action.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); Tackett, 180 F.3d at 1098.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, who was 48 years of age on the date of her last administrative hearing, has a ninth-grade education.[2] (Administrative Record ("AR") at 14, 57, 78, 470 & 483). Her past relevant work includes employment as an accounts payable clerk. (Id. at 14, 73 & 474).

Plaintiff protectively filed for DIB and SSI on March 25, 2003, alleging that she has been disabled since May 13, 2002, due to poor vision, neck ache, back ache, headaches, feet pain and

---

[2] The ALJ incorrectly stated that plaintiff has "a high school education, plus a year of college." (Compare Administrative Record at 14 with id. at 78 & 483).

2

high blood pressure.[3] (AR at 14-15, 57 & 71-72). Plaintiff's application was denied initially and upon reconsideration, after which she filed a timely request for a hearing. (Id. at 30-32, 43 & 49).

On March 21, 2006, plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (AR at 14, 470, 474-89 & 492-93). Plaintiff's friend, Evonne McClarin, also appeared and testified. (Id. at 14 & 489-91). The ALJ also heard testimony from Edward T. Kurata, a vocational expert ("VE"). (Id. at 14 & 492-98).

The ALJ denied plaintiff's request for benefits on May 16, 2006. (AR at 14-18). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (Id. at 15 & 17). At step two, the ALJ found that plaintiff suffers severe impairments consisting of chronic pain, blurred vision, dysthymia and borderline personality disorder.[4] (Id. at 17). At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's physical or mental impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[5] (Id. at 15 & 17).

The ALJ then assessed plaintiff's residual functional capacity[6] ("RFC") and determined that she can perform a limited range of light work. (See AR at 17). Specifically, the ALJ made the following findings regarding plaintiff's RFC:

---

[3] Plaintiff filed a prior SSI application on July 17, 1991, which was denied on November 1, 1991, and a prior DIB application in September 2002, which was denied on October 15, 2002. (AR at 14-15). The ALJ found "no good cause to reopen either of those[.]" (Id. at 15).

[4] The ALJ did not affirmatively find that these impairments are "severe." (See, generally, AR at 14-18). Nevertheless, because the ALJ did not end his analysis at this point, the court assumes that he did find them "severe." Cf. 20 C.F.R. §§ 404.1520(a)(4)(ii) ("If [the claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, [the claimant is] not disabled.") & 416.920(a)(4)(ii) (same).

[5] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[6] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

>>the [plaintiff] has the residual functional capacity to perform light exertion with occasional climbing, bending, kneeling, stooping, crouching and crawling. She also has no restriction of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace with no episodes of decompensation, each of extended duration.

(Id. at 17); (but see id. at 16) (describing RFC without any mental limitations). Based on plaintiff's RFC and the VE's testimony, the ALJ found, at step four, that plaintiff's impairments do not prevent her from performing her past relevant work.[7]  (Id. at 16-17).  Accordingly, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Act. (Id. at 15, 17 & 18).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 5-8). The ALJ's decision stands as the final decision of the Commissioner.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001, as amended Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the

---

[7] Alternatively, at step five, based on the VE's testimony and assuming that plaintiff required a sit/stand option and had blurry vision, the ALJ found that plaintiff could perform other work as an inspector. (AR at 17).

4

1 ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both
2 the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276
3 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of
4 supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240,
5 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the
6 ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id.
7 (quoting Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## DISCUSSION

I. THE ALJ ERRED IN HIS CREDIBILITY ASSESSMENT.

Plaintiff contends that the ALJ failed to properly assess her credibility and improperly disregarded her allegations of pain and other subjective symptoms. (See Joint Stip. at 20-21 & 24-25). Plaintiff maintains that the ALJ's proffered reasons for rejecting her credibility are not supported by substantial evidence. (See id.).

Plaintiff carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a] statement of symptoms[.]" 20 C.F.R. §§ 404.1508 & 416.908.

Once a plaintiff produces medical evidence of an underlying impairment which is reasonably likely to cause the alleged symptoms, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997, as amended Sept. 17, 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.") (internal citation omitted). The ALJ can then reject a plaintiff's

allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Because there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff's credibility must be clear and convincing. See Benton, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995, as amended April 9, 1996); Reddick, 157 F.3d at 722; see also Benton, 331 F.3d at 1041 (The ALJ must state "which symptom testimony he found not credible with enough specificity to allow a reviewing court to confirm that the testimony was rejected on permissible grounds and not arbitrarily.").

At the hearing, plaintiff testified that she suffers from blurred vision, headaches and constant pain. (AR at 475, 478, 482 & 487-88). She stated that any lifting or carrying is painful and that she only can stand or walk for less than five minutes before needing to rest. (Id. at 479). She testified that she uses a cane to walk, as prescribed by her doctor. (Id.). Finally, she stated that she takes a number of prescription medications for her pain and depression, which cause side-effects such as dizziness, tremors, drowsiness, and a loss of short-term memory and concentration. (Id. at 475, 478, 482-85 & 487).

In rejecting plaintiff's credibility, the ALJ found that "[plaintiff]'s inconsistencies negatively impact her credibility and do not permit reliance on her statements." (AR at 16). The ALJ stated that plaintiff "testified to a 10th grade education, but reported a 9th grade education at the South Bay Mental [H]ealth Center on March 15, 2005." (Id.) (internal citation omitted). In addition, the ALJ found that plaintiff's "assertion of vision impairment . . . impairs her credibility[]" because she did not seek corrective lenses. (Id.). The ALJ also did not believe plaintiff's "claim that she gained

100 pounds between May 2002 and June 2003." (Id.) (internal citation omitted). Finally, the ALJ found plaintiff's contention of "headaches since the [May 2002] motor vehicle accident" not credible because "an MRI of [her] brain after the accident was normal . . . [and a]n MRI of [her] cervical spine also showed only a small 1-mm to 2-mm bulge at C5-C6." (Id.) (internal citations omitted).

Having carefully reviewed the record and the parties' papers, the court is persuaded that the ALJ has failed to provide clear and convincing reasons and/or substantial evidence for discounting plaintiff's excess pain allegations and other symptoms. First, plaintiff provided sufficient medical evidence of underlying impairments that are reasonably likely to cause the pain and other symptoms described by plaintiff. (See, e.g., AR at 122-26 (treating physician's July 2002 report diagnosing post-traumatic head syndrome and musculoskeletal injuries); 136-37 (December 2002 MRI finding "fairly extensive epidural fibrosis"at L4-L5 and L5-S1);[8] 143 (examining physician's June 2003 report finding decreased vision, cervical neck pain with headaches, lumbar back pain and bilateral foot pain); 180 (diagnosing plaintiff with a dysthymic disorder and assigning her a GAF score of 53);[9] 253-65 (treating physician's October 2004 Patient Assessment Form diagnosing failed back syndrome, lumbosacral radiculitis and swollen nerve root);[10] 420 (treating physician's February 2004 diagnosis of "permanent [lumbosacral] damage[]")

---

[8] Epidural fibrosis is "scar tissue on the spinal cord[,]" which can result in "severe, chronic pain[.]" Back Pain Heath Center, http://www.webmd.com.

[9] "The essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years[.]" American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 376 (4th ed. 2000). A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See id. at 32. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficultly in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. at 34 (bold omitted).

[10] "When back surgery fails to remove [back] pain, the result is a condition known as failed back surgery syndrome, or FBSS[,]" which can be caused by "[s]car tissue that forms around the surgery site, interrupting normal neurological functioning." What is Failed Back Surgery Syndrome?, http://www.backandneck.about.com. Radiculophathy is a "[d]isorder of the spinal

& 424 (treating physician's July 2003 report diagnosing post traumatic pain, cervical and lumbar disc disease with radiculophathy and post-traumatic peripheral neuropathy)).[11] Because plaintiff produced sufficient medical evidence of underlying impairments that are likely to cause pain and other subjective symptoms, the ALJ erred to the extent he rejected plaintiff's credibility based upon a lack of objective findings to support her allegations. See Bunnell, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96-7P,[12] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, before rejecting the plaintiff's credibility, the ALJ must carefully review all the relevant evidence. See SSR 96-7P, 1996 WL 374186, at *1 (The ALJ "must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements. . . . In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence[.]"). Here, the ALJ did not review the extensive medical records from the Harbor-UCLA Medical Center, which diagnosed failed back surgery syndrome and placed her in a pain management program. (See, generally, AR at 14-17; see also Joint Stip.

---

nerve roots." Stedman's Medical Dictionary 1484 (26th ed. 1995).

[11]   Post-traumatic peripheral neuropathy "implies nerve pain . . . that has come on either after an injury or as a consequence of medical interventions like surgery[.]" Post Traumatic Neuropathy, http://www.painclinic.org.

[12]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

at 10 (Commissioner acknowledging that ALJ did not review Harbor-UCLA medical records); AR at 156-60 & 200-269 (Harbor-UCLA medical records)).

Third, the ALJ's rejection of plaintiff's subjective complaints based on her purported contradictory statements, (see AR at 16), is not supported by substantial evidence. Contrary to the ALJ's statement that plaintiff testified to a tenth-grade education after reporting a ninth-grade education, (see id.), plaintiff clearly testified that she has a ninth-grade education, (see id. at 483), and has consistently maintained that she finished the ninth grade. (See, e.g., id. at 78 & 184). Likewise, while the ALJ summarily dismisses plaintiff's claim that she gained 100 pounds between May 2002 and June 2003, he does not cite or reference any evidence to support his conclusion. (See id. at 16); see also SSR 96-7P, 1996 WL 374186, at *2 (credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record[]"). Further, plaintiff provides evidence that she weighed 120 pounds in September 1999. (AR at 450); (see also id. at 8) (making evidence presented to AC a part of the record). Thus, assuming that plaintiff weighed 120 pounds in May 2002, it is not incredible that plaintiff would perceive her gain of 76 pounds by June 2003, (see id. at 141), to be a 100-pound gain.

Fourth, the ALJ's rejection of plaintiff's subjective complaints based on her failure to seek corrective lenses for her blurry vision, (see AR at 16), is speculative and not supported by the record. See SSR 96-7P, 1996 WL 374186, at *4 ("The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence[.]"). There is no evidence that plaintiff's blurry vision could be improved with corrective lenses. (See, generally, AR at 121-469); see also Yang v. Apfel, 2000 WL 342669, at *4 (N.D. Cal. 2000) (ruling that "the ALJ improperly discredited plaintiff's credibility because he based his reasoning on his personal views and not on the evidence in the case record[]"). In fact, after obtaining glasses in July 2005, (see id. at 220 & 252), plaintiff continued to complain of blurry vision. (See, e.g., id. at 482); see also Reddick, 157 F.3d at 723 (The ALJ erred in his credibility determination "by not fully accounting for the context of materials or all parts of the testimony and reports."). Further, plaintiff has consistently complained of blurry vision since her May 2002 accident. (See, e.g., AR at 122, 125,

9

143 & 482); see also SSR 96-7P, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Finally, the ALJ's conclusion that plaintiff's claims of frequent headaches are not credible because an MRI of her brain was normal and an MRI of her cervical spine showed only a small bulge at C5-C6, (AR at 16), is not supported by substantial evidence. The ALJ provides no medical evidence for his implied contention that her headaches could not be caused by any other medical factors. The ALJ has, in effect, improperly substituted his own interpretation of the evidence without setting forth any authority or medical evidence to support his interpretation. See Tackett, 180 F.3d at 1102-03 (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000, as amended Dec. 13, 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); Banks v. Barnhart, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations and citations omitted).

II.   REMAND IS APPROPRIATE.

The court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989, as amended Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000, as amended May 4, 2000), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 595-96; Harman, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ must reconsider plaintiff's allegations of pain and other subjective symptoms and the resulting functional limitations, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. In light of the court's determination, it is not necessary to reach plaintiff's remaining contentions that the ALJ erred in his evaluation of the medical evidence. (See Joint Stip. at 8-19). However, on remand, the ALJ shall reassess all of the medical opinions and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. If the treating source opinions are insufficient for the ALJ to assess plaintiff's physical and mental impairments, he shall order additional consultative examination(s). The ALJ shall then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

This decision is not intended for publication.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **reversing** the decision of the Commissioner denying benefits and **remanding** the matter for further administrative action consistent with this Order.

Dated this 3rd day of October, 2007.

/s/
Fernando M. Olguin
United States Magistrate Judge